UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
(TYLER DIVISION)

| | |
|---|---|
| PATENT RESEARCH INSTITUTE, LLC, | Case No.: 6:11-cv-476 |
| Relator, | |
| vs. | |
| ABBOTT LABORATORIES, ABBOTT LABORATORIES, INC. , THE CLOROX COMPANY, CONAIR CORPORATION, DEE CEE LABORATORIES, INC., ELMER'S PRODUCTS, INC., EMPIRE LEVEL MANUFACTURING CORPORATION, FISKARS BRANDS, INC., FOUNTAINHEAD GROUP, INC., GENERAL NUTRITION CORPORATION, GENERAL TOOLS & INSTRUMENTS COMPANY, LLC, GLAXOSMITHKLINE CONSUMER HEALTHCARE, L.P., HEWLETT-PACKARD COMPANY, KAPSCH TRAFFICCOM U.S. CORPORATION, KLEIN TOOLS, INC., MONSTER, LLC, NATROL, INC., NATUREFIT VITAMINS, LLC, PFIZER, INC., STANLEY BLACK & DECKER, INC., STX, LLC, TTI FLOOR CARE NORTH | JURY TRIAL DEMANDED |

1

**AMERICA, INC., TWINLAB
CORPORATION, VITAMIN
RESEARCH PRODUCTS, INC.,
WERNER CO., AND WILSON
SPORTING GOODS CO.,**

    **Defendants.**

)
)
)
)
)
)
)
)
)
)
)

## COMPLAINT FOR FALSE PATENT MARKING

Relator Patent Research Institute, LLC ("Relator") alleges as follows:

## NATURE OF THE CASE

1. This is an action for false patent marking under section 292 of the Patent Act (35 U.S.C. §292), which provides that any person may sue to recover the civil penalty for false patent marking. Relator brings this *qui tam* action on behalf of the United States of America.

## PARTIES

2. Relator is a Texas limited liability company with its principal place of business in Houston, Texas.

3. Defendant Abbott Laboratories is an Illinois corporation having its principal place of business at Abbott Park Road, Abbott Park, IL 60064.

4. Defendant Abbott Laboratories, Inc. is a Delaware corporation having its principal place of business at Abbott Park Road, Abbott Park, IL 60064.

5.      Defendant The Clorox Company is a Delaware limited liability company having its principal place of business at 1221 Broadway, Oakland, CA 94612.

6.      Defendant Conair Corporation is a Delaware corporation having its principal place of business at 1 Cummings Point Road, Stamford, CT 06902.

7.      Defendant Dee Cee Laboratories, Inc. is a Tennessee corporation having its principal place of business at 304 Dee Cee Court, White House, TN 37188.

8.      Defendant Elmer's Products, Inc. is a Delaware corporation having its principal place of business at 1 Easton Oval, Columbus, OH 43219.

9.      Defendant Empire level Manufacturing Corporation is a Wisconsin corporation having its principal place of business at 929 Empire Drive, Mukwonago, WI 53149.

10.     Defendant Fiskars Brands, Inc. is a Wisconsin corporation having its principal place of business at 2537 Daniels Street, Madison, WI 53718.

11.     Defendant Fountainhead Group, Inc. is a Delaware corporation having its principal place of business at 23 Garden Street, New York Mills, NY 13417.

12.     Defendant General Nutrition Corporation is a Pennsylvania corporation having its principal place of business at 300 Sixth Ave., 11th Floor, Pittsburgh, PA 15222.

3

13.     Defendant General Tools & Instruments Company, LLC is a New York limited liability company having its principal place of business at 80 White Street, Suite #1, New York City, NY. 10013.

14.     Defendant GlaxoSmithKline Consumer Healthcare, L.P. is a Delaware limited partnership having its principal place of business at 200 N 16th Street, # 1, Philadelphia, PA 19102.

15.     Defendant Hewlett-Packard Company is a Delaware limited partnership having its principal place of business at 3000 Hanover Street, Palo Alto, CA 94304.

16.     Defendant Kapsch TrafficCom U.S. Corporation is a Delaware corporation having its principal place of business at 21515 Ridgetop Circle, Suite 290, Sterling, VA 20166.

17.     Defendant Klein Tools, Inc. is a Delaware corporation having its principal place of business at 450 Bond Street, Lincolnshire, IL 60069.

18.     Defendant Monster, LLC is a Nevada limited liability company having its principal place of business at 7251 W. Lake Mead Blvd., Las Vegas, NV 89128.

19.     Defendant Natrol, Inc. is a Delaware corporation having its principal place of business at 21411 Prairie Street, Chatsworth, CA 91311.

20.     Defendant NatureFit Vitamins, LLC is a Delaware corporation having its principal place of business at 21411 Prairie Street, Chatsworth, CA 91311.

21.     Defendant Pfizer, Inc. is a Delaware corporation having its principal place of business at 235 E. 42nd Street, New York, NY 10017.

22.     Defendant Stanley Black & Decker, Inc. is a Connecticut corporation having its principal place of business at 1000 Stanley Drive, New Britain, CT 06053.

23.     Defendant STX, LLC is a Maryland limited liability company having its principal place of business at 1500 Bush Street, Baltimore, MD 21230.

24.     Defendant TTI Floor Care North America, Inc. is a Delaware corporation having its principal place of business at 7005 Cochran Road, Glenwillow, OH 44139.

25.     Defendant Twinlab Corporation is a Delaware corporation having its principal place of business at 632 Broadway, Suite 301, New York, NY 10012.

26.     Defendant Vitamin Research Products, Inc. is a Nevada corporation having its principal place of business at 4610 arrowhead Drive, Carson City, NV 89706.

27.     Defendant Werner Co. is a Delaware corporation having its principal place of business at 93 Werner Road, Greenville, PA 16125.

28.     Defendant Wilson Sporting Goods Co. is a Delaware corporation having its principal place of business at 8750 W. Bryn Mawr Ave., Chicago, IL 60631.

## JURISDICTION AND VENUE

29.   This Court has subject matter jurisdiction over Relator's false-marking claims under Title 28 U.S.C. §§1331 and 1338(a).

30.   This Court has personal jurisdiction over Defendants by virtue of, *inter alia*, Defendants' persistent and continuous contacts with the Eastern District of Texas, including active and regular conduct of business during the relevant time period through their sales in the Eastern District of Texas.

31.   This Court has personal jurisdiction over Defendants because, *inter alia*, Defendants have violated Title 35 U.S.C. §292, and falsely marked, advertised, distributed, and sold products in the Eastern District of Texas.   Further, on information and belief, Defendants have sold falsely marked products in competition with sellers of competitive products in the Eastern District of Texas. Such sales by Defendants are substantial, continuous, and systematic.

32.   Venue is proper in this District under Title 28 U.S.C. §§1391(b) and (c) and 1395(a).

## FACTS

33.   Defendants have marked and/or continue to mark their products (collectively pled as the "Falsely Marked Products") with expired and/or inapplicable patents (collectively pled as the "Expired and Inapplicable Patents").   Defendants knew the

6

Expired and Inapplicable Patented were expired or inapplicable to the Falsely Marked Products. Nevertheless, Defendants marked and continue to mark the Falsely Marked Products with the Expired and Inapplicable Patents in an attempt to deceive.

**Count 1:  Abbott Laboratories and Abbott Laboratories, Inc.'s False Marking**

34.    Abbott Laboratories and Abbott Laboratories, Inc. have marked and/or continues to mark their products, including, but not limited to, their Similac® Expert Care for Diarrhea products with inapplicable patents, including at least U.S. Patent No. D419,455.

35.    No reasonable person could find that U.S. Patent No. D419,455 was applicable to the Similac® Expert Care for Diarrhea products. Abbott Laboratories and Abbott Laboratories, Inc. knew that U.S. Patent Nos. D419,455 was inapplicable, nevertheless marked it and continues to mark it on their products in an attempt to deceive.

**Count 2:  The Clorox Company's False Marking**

36.    The Clorox Company has marked and/or continues to mark its products, including, but not limited to, its Clorox$_2$® Stain Fighter and Color Booster products with inapplicable patents, including at least U.S. Patent No. D372,429, in an intent to deceive.

7

37.    No reasonable person could find that U.S. Patent No. D372,429 was applicable to the Clorox$_2$® Stain Fighter and Color Booster products.  The Clorox Company knew that U.S. Patent Nos. D372,429 was inapplicable, nevertheless marked it and continues to mark it on their products in an attempt to deceive.

## Count 3:  Conair Corporation's False Marking

38.    Conair Corporation has marked and/or continues to mark its products, including, but not limited to, its Hot Brush Model CA165D products with expired and/or inapplicable patents, including at least U.S. Patent Nos. D300,606; 4,699,123; 4,733,651; 4,759,343; and 4,815,441.

39.    U.S. Patent No. D300,606 expired no later than April 11, 2003.

40.    U.S. Patent No. 4,699,123 expired no later than September 27, 2005.

41.    U.S. Patent No. 4,733,651 expired no later than September 27, 2005.

42.    U.S. Patent No. 4,759,343 expired no later than September 27, 2005.

43.    U.S. Patent No. 4,815,441 expired no later than September 27, 2005.

44.    Conair Corporation knew that U.S. Patent Nos. D300,606; 4,699,123; 4,733,651; 4,759,343; and 4,815,441 were expired, nevertheless marked them and continues to mark them on its products in an attempt to deceive.

## Count 4:  Dee Cee Labroatories, Inc.'s False Marking

45.     Dee Cee Labroatories, Inc. has marked and/or continues to mark its products, including, but not limited to, its vitamin products with expired and/or inapplicable patents, including at least U.S. Patent Nos. 5,087,623; 5,087,624; and 5,175,156.

46.     U.S. Patent No. 5,087,623 expired no later than February 11, 2009.

47.     U.S. Patent No. 5,087,624 expired no later than February 11, 2009.

48.     U.S. Patent No. 5,175,156 expired no later than December 29, 2009.

49.     Dee Cee Labroatories, Inc. knew that U.S. Patent Nos. 5,087,623; 5,087,624; and 5,175,156 were expired, nevertheless marked them and continues to mark them on its products in an attempt to deceive.

## Count 5:  Elmer's Products, Inc.'s False Marking

50.     Elmer's Products, Inc. has marked and/or continues to mark its products, including, but not limited to, its 31 Rainbow 'n Glitter Colors products with inapplicable patents, including at least U.S. Patent Nos. D493,484 and D502,219.

51.     No reasonable person could find that U.S. Patent Nos. D493,484 and D502,219 were applicable to the 31 Rainbow 'n Glitter Colors products.  Elmer's Products, Inc. knew that U.S. Patent Nos. D493,484 and D502,219 were inapplicable, nevertheless marked them and continues to mark them on their products in an attempt to deceive.

## Count 6:  Fiskars Brands, Inc.'s False Marking

52.    Fiskars Brands, Inc. has marked and/or continues to mark its products, including, but not limited to, its Swing Arm Protractor products with expired and inapplicable patents, including at least U.S. Patent No. D335,823.

53.    U.S. Patent No. D335,823 expired no later than May 25, 2007.

54.    No reasonable person could find that U.S. Patent No. D335,823 was applicable to the Swing Arm Protractor products.  Fiskars Brands, Inc. knew that U.S. Patent No. D335,823 was expired and inapplicable, nevertheless marked it and continues to mark it on their products in an attempt to deceive.

## Count 7:  Fountainhead Group, Inc.'s False Marking

55.    Fountainhead Group, Inc. has marked and/or continues to mark its products, including, but not limited to, its Black Flag® Bug Fogger products with expired or inapplicable patents, including at least U.S. Patent No. 3,465,007.

56.    U.S. Patent No. 3,465,007 expired no later than December 5, 1986.

Fountainhead Group, Inc. knew that U.S. Patent No. 3,465,007 was expired, nevertheless marked it and continues to mark it on its products in an attempt to deceive.

## Count 8:  General Nutrition Corporation's False Marking

57.    General Nutrition Corporation has marked and/or continues to mark its products, including, but not limited to, its vitamin products with expired and/or

inapplicable patents, including at least U.S. Patent Nos. 5,087,623; 5,087,624; and 5,175,156.

58.     U.S. Patent No. 5,087,623 expired no later than February 11, 2009.

59.     U.S. Patent No. 5,087,624 expired no later than February 11, 2009.

60.     U.S. Patent No. 5,175,156 expired no later than December 29, 2009.

61.     General Nutrition Corporation knew that U.S. Patent Nos. 5,087,623; 5,087,624; and 5,175,156 were expired, nevertheless marked them and continues to mark them on its products in an attempt to deceive.

### Count 9:  General Tools & Instruments Company, LLC's False Marking

62.     General Tools & Instruments Company, LLC has marked and/or continues to mark its products, including, but not limited to, its Angle-Izer products with expired and inapplicable patents, including at least U.S. Patent No. 2,334,783.

63.     U.S. Patent No. 2,334,783 expired no later than May 1, 1960.

64.     No reasonable person could find that U.S. Patent No. 2,334,783 was applicable to the Angle-Izer products.  General Tools & Instruments Company, LLC knew that U.S. Patent No. 2,334,783 was expired and inapplicable, nevertheless marked it and continues to mark it on their products in an attempt to deceive.

### Count 10:  GlaxoSmithKline Consumer Healthcare, L.P.'s False Marking

11

65.    GlaxoSmithKline Consumer Healthcare, L.P. has marked and/or continues to mark its products, including, but not limited to, its vitamin products with expired and/or inapplicable patents, including at least U.S. Patent Nos. 5,087,624 and 5,175,156.

66.    U.S. Patent No. 5,087,624 expired no later than February 11, 2009.

67.    U.S. Patent No. 5,175,156 expired no later than December 29, 2009.

68.    GlaxoSmithKline Consumer Healthcare, L.P. knew that U.S. Patent Nos. 5,087,624 and 5,175,156 were expired, nevertheless marked them and continues to mark them on its products in an attempt to deceive.

## Count 11:  Kapsch TrafficCom U.S. Corporation's False Marking

69.    Kapsch TrafficCom U.S. Corporation has marked and/or continues to mark its products, including, but not limited to, its EZ-Pass products with expired and inapplicable patents, including at least U.S. Patent Nos. 5,164,732; 5,192,594; and 5,196,846.

70.    U.S. Patent No. 5,164,732 expired no later than November 17, 2009.

71.    U.S. Patent No. 5,192,594 expired no later than March 9, 2000.

72.    U.S. Patent No. 5,196,846 expired no later than March 23, 2000.

73.    No reasonable person could find that U.S. Patent No. 5,192,594 was applicable to the EZ-Pass products.  Kapsch TrafficCom U.S. Corporation knew

that U.S. Patent Nos. 5,164,732; 5,192,594; and 5,196,846 were expired and/or inapplicable, nevertheless marked them and continues to mark them on their products in an attempt to deceive.

### Count 12:  Klein Tools, Inc.'s False Marking

74.   Klein Tools, Inc. has marked and/or continues to mark its products, including, but not limited to, its DepthFinder Fish Tapes products with inapplicable patents, including at least U.S. Patent No. D574,277.

75.   No reasonable person could find that U.S. Patent No. D574,277 was applicable to the DepthFinder Fish Tapes products.  Klein Tools, Inc. knew that U.S. Patent No. D574,277 was inapplicable, nevertheless marked it and continues to mark it on their products in an attempt to deceive.

### Count 13:  Hewlett-Packard Company and Monster, LLC's False Marking

76.   Hewlett-Packard Company and Monster, LLC have marked and/or continue to mark their products, including, but not limited to, their HP Monster surge protector products with inapplicable patents, including at least U.S. Patent Nos. D447,119 and D443,250.

77.   No reasonable person could find that U.S. Patent Nos. D447,119 was applicable to the HP Monster surge protector products.  Hewlett-Packard Company and Monster, LLC knew that U.S. Patent Nos. D447,119 and D443,250 were

inapplicable, nevertheless marked them and continues to mark them on their products in an attempt to deceive.

### Count 14:  Natrol, Inc.'s False Marking

78.     Natrol, Inc. has marked and/or continues to mark its products, including, but not limited to, its vitamin products with expired and/or inapplicable patents, including at least U.S. Patent Nos. 5,087,623; 5,087,624; and 5,175,156.

79.     U.S. Patent No. 5,087,623 expired no later than February 11, 2009.

80.     U.S. Patent No. 5,087,624 expired no later than February 11, 2009.

81.     U.S. Patent No. 5,175,156 expired no later than December 29, 2009.

82.     Natrol, Inc. knew that U.S. Patent Nos. 5,087,623; 5,087,624; and 5,175,156 were expired, nevertheless marked them and continues to mark them on its products in an attempt to deceive.

### Count 15:  NatureFit Vitamins, LLC's False Marking

83.     NatureFit Vitamins, LLC has marked and/or continues to mark its products, including, but not limited to, its vitamin products with expired and/or inapplicable patents, including at least U.S. Patent Nos. 5,087,623; 5,087,624; and 5,175,156.

84.     U.S. Patent No. 5,087,623 expired no later than February 11, 2009.

85.     U.S. Patent No. 5,087,624 expired no later than February 11, 2009.

86.     U.S. Patent No. 5,175,156 expired no later than December 29, 2009.

87.    NatureFit Vitamins, LLC knew that U.S. Patent Nos. 5,087,623; 5,087,624; and 5,175,156 were expired, nevertheless marked them and continues to mark them on its products in an attempt to deceive.

### Count 16:  Pfizer, Inc.'s False Marking

88.    Pfizer, Inc. has marked and/or continues to mark its products, including, but not limited to, its ThermaCare® HeatWraps Neck, Wrist and Shoulder products with inapplicable patents, including at least U.S. Patent Nos. D571,015; D571,922; D572,367; D572,825; D572,826; 6,336,935; 5,918,590; 6,020,040; 6,123,717; and 6,146,732.

89.    No reasonable person could find that U.S. Patent Nos. D571,015; D571,922; D572,367; D572,825; D572,826; 6,336,935; 5,918,590; 6,020,040; 6,123,717; and 6,146,732 were applicable to the ThermaCare® HeatWraps Neck, Wrist and Shoulder product.  Pfizer, Inc. knew that U.S. Patent Nos. D571,015; D571,922; D572,367; D572,825; D572,826; 6,336,935; 5,918,590; 6,020,040; 6,123,717; and 6,146,732 were inapplicable, nevertheless marked them and continues to mark them on their products in an attempt to deceive.

### Count 17:  Stanley Black & Decker, Inc.'s False Marking

90.    Stanley Black & Decker, Inc. has marked and/or continues to mark its products, including, but not limited to, its utility knives and squares with expired

and/or inapplicable patents, including at least U.S. Patent Nos. D290,092; 4,524,518 and 4,663,845.

91.    U.S. Patent No. D290,092 expired no later than June 2, 2001.

92.    U.S. Patent No. 4,524,518 expired no later than June 13, 2003.

93.    U.S. Patent No. 4,663,845 expired no later than March 3, 2006.

94.    Stanley Black & Decker, Inc. knew that U.S. Patent Nos. D290,092; 4,524,518 and 4,663,845 were expired, nevertheless marked them and continues to mark them on its products in an attempt to deceive.

### Count 18:  STX, LLC's False Marking

95.    STX, LLC has marked and/or continues to mark its products, including, but not limited to, its lacrosse sticks products with expired patents, including at least U.S. Patent No. 4,940,243.

96.    U.S. Patent No. 4,940,243 expired no later than September 28, 2009.

97.    STX, LLC knew that U.S. Patent No. 4,940,243 was expired, nevertheless marked it and continues to mark it on its products in an attempt to deceive.

### Count 19:  TTI Floor Care North America, Inc.'s False Marking

98.    TTI Floor Care North America, Inc. has marked and/or continues to mark its products, including, but not limited to, its Hoover® Floormate® Multi-Surface

16

detergent products with inapplicable patents, including at least U.S. Patent No. D237,253.

99.   U.S. Patent No. D237,253 expired no later than October 21, 1989.

100.   TTI Floor Care North America, Inc. knew that U.S. Patent No. D237,253 was expired, nevertheless marked it and continues to mark it on its products in an attempt to deceive.

### Count 20:  Twinlab Corporation's False Marking

101.   Twinlab Corporation has marked and/or continues to mark its products, including, but not limited to, its vitamin products with expired and/or inapplicable patents, including at least U.S. Patent Nos. 5,087,623; 5,087,624; and 5,175,156.

102.   U.S. Patent No. 5,087,623 expired no later than February 11, 2009.

103.   U.S. Patent No. 5,087,624 expired no later than February 11, 2009.

104.   U.S. Patent No. 5,175,156 expired no later than December 29, 2009.

105.   Twinlab Corporation knew that U.S. Patent Nos. 5,087,623; 5,087,624; and 5,175,156 were expired, nevertheless marked them and continues to mark them on its products in an attempt to deceive.

### Count 21:  Werner Co.'s False Marking

106.   Werner Co. has marked and/or continues to mark its products, including, but not limited to, its ladder products with expired and/or inapplicable patents,

including at least U.S. Patent Nos. D310,884; D340,773; 5,165,641; and 5,259,480.

107.   U.S. Patent No. D310,884 expired no later than September 25, 2004.

108.   U.S. Patent No. D340,773 expired no later than December 26, 2007.

109.   U.S. Patent No. 5,165,641 expired no later than April 17, 2010.

110.   U.S. Patent No. 5,259,480 expired no later than November 9, 2010

111.   Werner Co. knew that U.S. Patent Nos. D310,884; D340,773; 5,165,641; and 5,259,480 were expired, nevertheless marked them and continues to mark them on its products in an attempt to deceive.

## **Count 22:  Wilson Sporting Goods Co.'s False Marking**

112.   Wilson Sporting Goods Co. has marked and/or continues to mark its products, including, but not limited to, its Hyper Hammer tennis racquet products with expired patents, including at least U.S. Patent No. 4,768,786.

113.   U.S. Patent No. 4,768,786 expired no later than September 6, 2005.

114.   Wilson Sporting Goods Co. knew that U.S. Patent No. 4,768,786 was expired, nevertheless marked it and continues to mark it on its products in an attempt to deceive.

## **INJURY IN FACT TO THE UNITED STATES**

115.   Defendants' practice of false marking is injurious to the United States.

18

116.    The false marking alleged above caused injuries to the sovereignty of the United States arising from Defendants' violations of federal law, specifically, the violation of 35 U.S.C. §292(a).  The United States has conferred standing on "any person," which includes Relator, as the United States' assignee of the claims in this complaint to enforce §292.

117.    The false marking alleged above caused proprietary injuries to the United States, which, together with §292, would provide another basis to confer standing on Relator as the United States' assignee.

118.    The marking and false marking statutes exist to give the public notice of patent rights.  Congress intended the public to rely on marking as a ready means of discerning the status of intellectual property embodied in an article of manufacture or design, such as the Falsely Marked Products.

119.    Federal patent policy recognizes an important public interest in permitting full and free competition in the use of ideas that are, in reality, a part of the public domain—such as those described in the Expired and Inapplicable Patents.

120.    Congress's interest in preventing false marking was so great that it enacted a statute that sought to encourage private parties to enforce the statute.  By permitting members of the public to bring *qui tam* suits on behalf of the

government, Congress authorized private persons like Relator to help control false marking.

121.   The acts of false marking alleged above deter innovation and stifle competition in the marketplace for at least the following reasons: if an article that is within the public domain is falsely marked, potential competitors may be dissuaded from entering the same market; false marks may also deter scientific research when an inventor sees a mark and decides to forego continued research to avoid possible infringement; and false marking can cause unnecessary investment in design around or costs incurred to analyze the validity or enforceability of a patent whose number has been marked upon a product with which a competitor would like to compete.

122.   The false marking alleged above misleads the public into believing that the Expired and Inapplicable Patents give Defendants control of the Falsely Marked Products (as well as like products), placing the risk of determining whether the Falsely Marked Products are controlled by such patents on the public, thereby increasing the cost to the public of ascertaining who, if anyone, in fact controls the intellectual property embodied in the Falsely Marked Products.

123.   Thus, in each instance where a representation is made that the Falsely Marked Products are protected by the Expired and Inapplicable Patents, a member

of the public desiring to participate in the market for products like the Falsely Marked Products must incur the cost of determining whether the involved patents are valid and enforceable.  Failure to take on the costs of a reasonably competent search for information necessary to interpret each patent, investigation into prior art and other information bearing on the quality of the patents, and analysis thereof can result in a finding of willful infringement, which may treble the damages an infringer would otherwise have to pay.

124.   The false marking alleged in this case also creates a misleading impression that the Falsely Marked Products are technologically superior to previously available products, as articles bearing the term "patent" may be presumed to be novel, useful, and innovative.

125.   Every person or company in the United States is a potential entrepreneur with respect to the process, machine, manufacture, or composition of matter described in the Expired and Inapplicable Patents.  Moreover, every person or company in the United States is a potential competitor with respect to the Falsely Marked Products marked with the Expired and Inapplicable Patents.

126.   Each Falsely Marked Product or advertisement thereof, because it is marked with or displays the Expired and Inapplicable Patents, is likely to, or at least has the potential to, discourage or deter each person or company (itself or by its

21

representatives), which views such marking from commercializing a competing product, even though the Expired and Inapplicable Patents do nothing to prevent any person or company in the United States from competing in commercializing such products.

127.   The false marking alleged in this case and/or advertising thereof has quelled competition with respect to similar products to an immeasurable extent, thereby causing harm to the United States in an amount that cannot be readily determined.

128.   The false marking alleged in this case constitutes wrongful and illegal advertisement of a patent monopoly that does not exists and, as a result, has increased, or at least maintained, the market power or commercial success of the Falsely Marked Products.

129.   Each individual false marking (including each time an advertisement with such marking is accessed on the Internet) is likely to harm, or at least potentially harms, the public.  Thus, each such false marking is a separate offense under 35 U.S.C. §292(a).

130.   Each offense of false marking creates a proprietary interest of the United States in the penalty that may be recovered under 35 U.S.C. §292(b).

131.   For at least the reasons stated in paragraphs 2 to 130 above, the false marking alleged in this case caused injuries to the sovereignty of the United States

arising from violations of federal law and has caused proprietary injuries to the United States.

## CLAIM

132.  For the reasons stated in paragraphs 2 to 131 above, Defendants have violated section 292 of the Patent Act by falsely marking the Falsely Marked Products with intent to deceive the public.

## PRAYER FOR RELIEF

133.  Relator thus requests this Court, pursuant to 35 U.S.C. §292, to do the following:

A.   enter a judgment against Defendants and in favor of Relator that Defendants have violated 35 U.S.C. §292 by falsely marking products with knowledge that the patents have expired and/or are not applicable for the purpose of deceiving the public;

B.   order Defendants to pay a civil monetary fine of $500 per false marking offense, or an alternative reasonable amount determined by the Court taking into consideration the total revenue and gross profit derived from the sale of falsely marked products and the degree of intent to falsely mark the products,

23

one-half of which shall be paid to the United States and the other half to Relator;

C.    enter a judgment declaring that this case is "exceptional," under 35 U.S.C. §285 and award in favor of Relator, and against Defendants, the costs incurred by Relator in bringing and maintaining this action, including reasonable attorneys' fees;

D.    order that Defendants, their officers, agents, servants, employees, contractors, suppliers, and attorneys be enjoined from committing new acts of false patent marking and be required to cease all existing acts of false patent marking within 90 days; and

E.    grant Relator such other and further relief as the Court may deem just and equitable.

## **JURY DEMAND**

134.   Relator demands a jury trial on all issues so triable.

Dated: September 9, 2011                    Respectfully submitted,

                                              /s/ Randall T. Garteiser
                                            Randall T. Garteiser
                                              Texas Bar No. 24038912
                                              randall@glgnow.com
                                            Christopher A. Honea
                                              Texas Bar No. 24059967
                                              chris.honea@glgnow.com
                                            GARTEISER LAW GROUP
                                            44 North San Pedro Road
                                            San Rafael, California 94903
                                            [Tel.] (415)785-3762
                                            [Fax] (415)785-3805

                                            **ATTORNEYS FOR PATENT RESEARCH
                                            INSTITUTE, LLC**